**Angelo D'AMANTE, Plaintiff,**

v.

**ISTHMIAN LINES, Inc., Defendant.**
**Action No. 1.**

**LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**ISTHMIAN LINES, Inc., Defendant.**
**Action No. 2.**

**Civ. Nos. 16864, 17969.**

United States District Court
E. D. New York.
Feb. 27, 1958.

1. United States v. Standard Oil Co. of New York, D.C.1911, 192 F. 438.

Philip F. DiCostanzo, Brooklyn, N. Y., for Angelo D'Amante.

Macklin, Speer, Hanan & McKernan, New York City, for Liberty Mutual Ins. Co., Leo F. Hanan, Martin J. McHugh, New York City, of counsel.

Budd, Quencer & Commette, New York City, Attorneys for Isthmian Lines, Inc., Albert S. Commette, New York City, of counsel.

ZAVATT, District Judge.

## Action No. 1

In Action No. 1, Angelo D'Amante is suing Isthmian Lines, Inc. to recover $25,000 damages for personal injuries he claims to have sustained on July 23, 1955 while he was aboard a lighter alongside the S.S. Steel Worker, which was moored to a pier at the Erie Basin Terminal within the Eastern District of New York and is owned by the defendant. He alleges in his complaint that on that day he was in the employ of International Terminal Operating Co. Inc., in the capacity of a longshoreman; that prior to July 23, 1955 his employer had entered into a stevedoring contract with the defendant; that on July 23, 1955 he was aboard the lighter as a longshoreman in the employ of International Terminal; that he sustained personal injuries through the negligence of the defendant and because of the unseaworthy condition of its vessel, the S.S. Steel Worker. The defendant answered the complaint. It denied the affirmative allegations of the complaint; pleaded the contributory negligence of the plaintiff as a first affirmative defense and, as a second affirmative defense, alleged in substance that the plaintiff had filed a claim against his employer for compensation under the provisions of the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C.A. § 901 et seq.); that the Deputy Commissioner of the Second Compensation District, United States Employees' Compensation Commission, had filed an order on July 31, 1956 (prior to the date when the plaintiff commenced this action) directing International Terminal and its insurer, Liberty Mutual Insurance Company, to pay compensation in the sum of $1,630.40 to the plaintiff; that thereafter and pursuant to that order payment of compensation was duly made to and accepted by the plaintiff before the plaintiff commenced this action, and that that payment "operated as an assignment to the employer and/or its insurance carrier, Liberty Mutual Insurance Company, of all the rights of the plaintiff herein to recover damages for the injuries set forth in the com-

plaint" and, therefore, that D'Amante has no right to maintain this action.[1]

The defendant now moves pursuant to Rule 56(b), Federal Rules of Civil Procedure, 28 U.S.C.A. for summary judgment in its favor upon the ground that D'Amante is not the proper party plaintiff.

### Action No. 2

In April, 1957, after D'Amante had accepted such compensation under the award in the said compensation order so filed, and approximately seven months after D'Amante had commenced action No. 1 in this Court, Liberty Mutual commenced action No. 2 in the United States District Court for the Southern District of New York. This action was transferred to this Court by an order entered on the consent of the defendant in that action. In action No. 2 Liberty Mutual is suing Isthmian to recover the same amount, to wit, $25,000 for the personal injuries allegedly sustained by D'Amante. In its complaint it alleges in substance the same allegations of D'Amante's complaint in action No. 1 and, in addition, alleges facts to show that it is entitled to institute action No. 2 pursuant to 33 U.S.C.A. § 933(i) as the insurance carrier of International Terminal, to which, it is claimed, D'Amante assigned his cause of action against Isthmian by accepting payment of compensation under the award in the compensation order so filed.

Although no answer to the complaint in this action has been filed as required by Rule 5(d), Federal Rules of Civil Procedure, 28 U.S.C.A., the moving papers include a copy of the defendant's answer, from which it appears that the defendant has denied the material allegations of the complaint and has pleaded affirmatively:

1. That D'Amante assumed the risks of his employment;

2. That D'Amante's injuries were caused by his own negligence, with no contributory negligence on the part of the defendant; and

3. That the "complaint fails to state a claim upon which relief can be granted".

The defendant now moves pursuant to Rule 56(b), Federal Rules of Civil Procedure, 28 U.S.C.A., for summary judgment in its favor upon the ground that there is a conflict of interests between Liberty Mutual as plaintiff and Liberty Mutual as the insurance carrier of the defendant.

### Additional Information Requested by the Court

After the argument of these two motions the Court requested and received from the attorneys for Liberty Mutual and the attorneys for Isthmian certain information not set forth in the moving affidavits. The attorneys for Liberty Mutual submitted to the Court:

Their letter of October 21, 1957;

The affidavit of Leo F. Hanan sworn to October 21, 1957;

Their letter of November 22, 1957;

A copy of the policy of compensa-

---

1. 33 U.S.C.A. § 933 gives an injured employee, such as D'Amante, the right to elect either to receive compensation or to recover damages against the third party who has caused his injuries. If he accepts compensation under an award in a compensation order, acceptance thereof operates as an assignment to his employer of all his rights to recover damages against the third person. Where the employer is insured and the insurance carrier has assumed the payment of the compensation, the insurance carrier is subrogated to all the rights of the employer under this section. See 33 U.S.C.A. § 933(a), (b), (i).

Where 33 U.S.C.A. § 933 effects such an assignment to the employer, the employer may either institute proceedings against the third person to recover damages which the employee has sustained or the employer may compromise with such third person without suing or after having instituted suit. In the event of such a recovery by the employer, the employer may retain all expenses which he has incurred, the amount which he has paid to the employee as compensation, the value of all amounts thereafter payable to the employee as compensation, and shall pay any excess so recovered to the injured employee. See 33 U.S.C.A. § 933(d), (e).

tion insurance in effect between Liberty Mutual and D'Amante's employer at the time of the alleged accident;

A copy of the policy of liability insurance between Liberty Mutual and D'Amante's employer in effect at the time of the alleged accident.

The attorneys for Isthmian submitted to the Court:

A copy of the stevedoring contract between D'Amante's employer and Isthmian dated February 2, 1948, and amended in April, 1953;

The affidavit of Albert S. Commette sworn to October 23, 1957;

A photostatic copy of the letter of D'Amante's employer to Budd, Quencer & Commette dated May 14, 1957;

A photostatic copy of the letter of Liberty Mutual to Albert S. Commette dated November 18, 1956;

The letter of Budd, Quencer & Commette to the Court dated October 23, 1957.

### The Relationship Between D'Amante's Employer and Isthmian; Liberty Mutual, D'Amante's Employer and Isthmian

The papers now before the Court reveal the following facts:

The stevedoring contract between D'Amante's employer and Isthmian Lines is dated February 2, 1948, and was modified by an agreement in April, 1953. It contains an indemnification clause under which International (formerly the Jarka Corporation) agrees to "indemnify and save harmless Isthmian * * * against any and all claims, demands, actions and/or proceedings of any kind * * * that may be made or instituted against * * * them * * * by the employees of the Stevedore * * * as a result of damage or injury * * * from causes arising out of or in any way connected with, and * * *, from causes claimed to have arisen out of or in connection with the stevedoring work and operations and the use of * * * all * * * gear * * *, including those furnished by Isthmian * * * ", regardless of whether or not the Stevedore is negligent. D'Amante's employer has so agreed to indemnify Isthmian in an amount far in excess of $25,000.

By paragraph 12, at page 10 of that contract, the Stevedore agrees to obtain and maintain in full force and effect public liability insurance in an amount far in excess of $25,000 in respect of bodily injury to one person and on account of any one accident wherein more than one person may be injured, and the contract further provides that this public liability insurance shall carry no deductible. The contract provides that not only the Stevedore but also Isthmian shall be named as assureds in the public liability insurance policy or policies, and that these policies shall also provide that in respect of Isthmian " * * * the underwriters thereon shall respond, irrespective of any other insurance that may be carried by Isthmian * * * ", and that " * * * these requirements for insurance shall not be construed as relieving the Stevedore * * * in whole or in part, from its obligations and liability to Isthmian * * * as provided in this contract".

Pursuant to this contract the Stevedore furnished the required public liability insurance (in an amount far in excess of $25,000) from Liberty Mutual under its policy number RG–20–641159–55. Coverage A of this policy obligates Liberty Mutual to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injuries sustained by any person, and it provides that the coverage includes coverage for the liability for personal injury assumed by the Stevedore by any written contract designated in the Contractual Liability Endorsement which is attached to and forms a part of the policy. This endorsement includes the stevedoring contract between International and Isthmian. By the terms of this policy Liberty Mutual also agrees to defend any suit against the insured which alleges injury or death and seeks damages on account thereof " * * *

even if such suit is groundless, false or fraudulent * * * ", and to pay all expenses incurred by Liberty Mutual, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until Liberty Mutual shall have paid, tendered or deposited in court such part of any such judgment as does not exceed the limit of its liability under the policy. It is clear from an examination of the policy that the word "insured" includes not only International Terminal but also Isthmian.

Liberty Mutual is also the Stevedore's assurer under its Workmen's Compensation and Employers' Liability policy number W.C.–20–641196–55. Although Liberty Mutual has excised the amount of its coverage under this policy from the copy submitted to the Court, it is reasonable to infer that the amount of this coverage exceeds the sum of $25,000, and the Court does so infer.

### The Relationship Between Liberty Mutual and the Attorneys for the Defendant in Action No. 1

When action No. 1 was instituted, Liberty Mutual retained the law firm of Budd, Quencer & Commette to appear for and defend the defendant, and advised these attorneys that Liberty Mutual took the position that the plaintiff was "not the proper party in interest in this lawsuit, since the Longshoremen's and Harbor Workers' Act assigns his cause of action to the Liberty Mutual Insurance Company, compensation carrier". It also pointed out to retained counsel that Liberty's time within which to bring a third party action had not yet expired and, therefore, that it believed "the instant action to be improper and premature, even if the plaintiff were relying upon the Czaplicki decision" (letter of Liberty Mutual to Albert S. Commette dated December 18, 1956—approximately six months after the decision of the United States Supreme Court in Czaplicki v. The Hoegh Silvercloud, 1956, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387. This law firm, or Mr. Commette individually, had been retained in various matters by Liberty Mu-

tual to represent either Isthmian or International over a period of several years before Liberty Mutual retained these attorneys to represent the defendant in action No. 1.

### The Relationship Between Liberty Mutual and the Attorneys for the Plaintiff in Action No. 2

On October 25, 1956 (approximately four months after the Supreme Court of the United States had handed down its decision in the Czaplicki case supra), Mr. Thomas F. Keane, general counsel for Liberty Mutual, and Mr. Wesley D. Goding, Claims Manager for Liberty Mutual, conferred with Mr. Leo F. Hanan, a member of the law firm of Macklin, Speer, Hanan & McKernan, to discuss whether that firm would be willing to act as counsel for Liberty Mutual in action No. 2. As a result of this conference this firm agreed so to act and the terms and conditions of its retainer were set forth thereafter in a letter from Liberty Mutual to this law firm dated December 10, 1956, as follows:

"December 10, 1956

"Macklin, Speer, Hanan & McKernan
"99 John Street
"New York, N. Y.

"Re: Angelo D'Amante vs.
International Terminal
Operating– C9–166783
P9–28942

"Attention: Leo Hannan, Esq.

"Gentlemen:

"This letter confirms the discussion of this matter that Mr. Keane and I had with you on October 25, 1956.

"On July 23, 1955, Angelo D'-Amante, a stevedore employed by International Terminal Operating Co. Inc., while helping to unload the S. S. Steel Worker, was injured under circumstances which gave him option of accepting compensation under the Longshoremen's and Harbor Worker's Act, or bringing a third party

action against the owner of the S. S. Steel Worker for damages for his injuries.

"We are the Workmen's Compensation insurance carrier for D'Amante's employer, and, in addition, are under a policy obligation to defend the shipowner Isthmian Lines, Inc. in any action which might be brought against it by D'Amante for this injury.

"D'Amante elected to accept benefits under a formal award of compensation and, by virtue of the terms of the Longshoremen's and Harbor Worker's Act, his cause of action against the shipowner has been assigned to us.

"Despite such assignment, and appearing by Philip F. DiCostanzo, the same attorney who represented him before the Federal Commission when he elected to accept compensation, the plaintiff has commenced an action in the United States District Court for the Eastern District of New York against Isthmian Lines, Inc., the shipowners, seeking damages for his injuries and alleging negligence and unseaworthiness. This action was commenced around August 23, 1956, and we believe that it is premature and that Angelo D'Amante is not the proper party plaintiff.

"We appreciate the fact that the foregoing matters create a conflict of interest between us and D'Amante. We are also aware of the recent Czaplicki decision holding that where such conflict of interest is coupled with inaction on the carrier's part, the injured party may bring the third party action in his own name.

"It is our wish to commence a timely third party action in our name against the shipowner to recover damages for the injuries sustained by D'Amante if you consider one is justified. At the same time it is our wish that this action be handled in such a manner that the interests of D'Amante will be fully protected.

"We are forwarding, herewith, a full copy of the report of accident and the investigation in our file in this matter. In addition, you are authorized to have any further investigation made for you by other agencies at our expense.

"We request that you examine the enclosed information, and such further investigation as you conduct, and if you deem it appropriate bring action in our name against any third party who may be liable for Mr. D'Amante's injury, including our assured Isthmian Lines, Inc.

"You are hereby authorized to initiate such action or actions as you deem proper, to try such actions to a conclusion, to discontinue, to settle or otherwise dispose of such actions as you in your sole discretion may decide without further consultation with us, subject of course to your giving due consideration of Mr. D'Amante's rights in the matter.

"This letter will serve as your retainer and authorization to act as our attorney. We send you herewith our check for $250.00 retainer fee and it is agreed that you will handle this matter on a contingent fee basis; that the amount of such fee will be consonant with the schedule of contingent fees promulgated by the Appellate Division, 1st Dept., to become effective January 1, 1957, recognizing, of course, the possibility that in the end such fee may be fixed by the Deputy Commissioner pursuant to the provisions of the Longshoremen's and Harbor Worker's Act.

"This will also advise you that in any litigation arising from this accident where it is necessary to enter a defense on behalf of Isthmian Lines, Inc., such defense will be handled by Albert S. Commette, Esq., of Budd, Quencer and Commette, 420 Lexington Avenue, New York City. It is the intention of

Liberty Mutual Insurance Company to collaborate with Mr. Commette in the defense of our assured, Isthmian Lines, Inc., and it is for that reason that we in effect give you carte blanche authorization to represent us as assignee of D'Amante in the third party litigation as you see fit without further consultation or authorization from us as outlined above.

"If you have any question with respect to any of the foregoing, please feel free to call upon the undersigned.

"Very truly yours,

"Liberty Mutual Insurance Company

"By Wesley D. Goding"

For several years prior to this conference, this law firm had acted as trial counsel for Liberty Mutual in numerous marine matters. It should be noted that in this letter Liberty Mutual notified the prospective attorneys for the plaintiff in action No. 2 that the defense to any action this firm would see fit to institute would be handled by Mr. Commette, of Budd, Quencer & Commette, the same firm of attorneys which Liberty Mutual had retained to defend the defendant in action No. 1.

When Isthmian was served in action No. 2 it would appear that Isthmian forwarded a copy of the complaint to the Stevedore. Whereupon the Stevedore forwarded the same to Budd, Quencer & Commette by letter, requesting that firm to handle action No. 2 on behalf of the Isthmian Lines for the account of Liberty Mutual.

"May 14, 1957

"Budd, Quencer & Commette
"420 Lexington Avenue
"New York 17, New York

"Att: Mr. A. Commette

"Re: Angelo D'Amante v. I.T.O.
"Inj: 7/23/55
"Our File #L–2230

"Gentlemen:

"We are attaching hereto complaint against Isthmian Lines Inc. filed by the Liberty Mutual Insurance Company for recovery of lien etc., which we would appreciate your handling on behalf of the Isthmian Lines Inc. for the account of Liberty Mutual Insurance Company.

"Well known to you attorney P. Di-Costanzo has filed an action against Isthmian Lines Inc. on August 22, 1956. This was subsequent to a formal award issued by the U. S. Department of Labor dated July 31 1956. This method is being used for transmittal and defense of this document because of a possibility of a conflict of interest. You undoubtedly already have a basic file in this connection. If there are any questions about this matter please do not hesitate to contact the undersigned.

"Very truly yours,

"International Terminal Operating Co. Inc.

"(F. P. Adamo)
"F. P. Adamo
"Insurance Manager"

"FPA:mf
"encl.

Apparently the Stevedore considered it necessary to explain to these attorneys why it, rather than Liberty Mutual, was forwarding the complaint and retaining the attorneys to represent the defendant in action No. 2 for the account of Liberty Mutual.

This firm of attorneys answered the complaint as attorneys for Isthmian and now moves for summary judgment.

### The Relationship Between Liberty Mutual and D'Amante

In Liberty Mutual's letter of December 10, 1956 to the attorneys for the plaintiff in action No. 2, supra, Liberty Mutual recognizes that there is a conflict of interest between Liberty Mutual and D'Amante and admits that it was then aware of the Czaplicki decision, supra.

### The Arguments of the Attorneys for the Defendant Isthmian in Support of Both Motions

The moving affidavits in support of both motions are identical. The affidavit of Walter H. Husted, Manager of Claims and Insurance for Isthmian Lines, contends that Isthmian should not be subjected to two separate lawsuits which seek damages for the alleged injury to D'Amante; that only one action should be sustained. The affidavit of Mr. Commette, a member of the firm representing Isthmian in both actions, urges that both motions be granted or "such other relief to which the defendant may be entitled". The memoranda of law submitted by the attorneys for Isthmian in support of both motions are identical and contend that the complaint in each action is "legally insufficient as a matter of law". They argue that the motion in action No. 1 should be granted because the plaintiff is not the proper party in interest; that the motion in action No. 2 should be granted " * * * on the ground that there is a conflict of interests".

### The Arguments of the Attorneys for the Plaintiff in Action No. 2

These attorneys submitted no affidavits in opposition to the motion for summary judgment in action No. 2. But in their memorandum in opposition to the motion they contend that one of the two actions should be allowed to stand. They see no conflict of interest which would entitle D'Amante to maintain action No. 1. They argue that the facts in the instant case differ from those in the Czaplicki case; that, in the Czaplicki case there was a conflict of interest plus inaction, whereas in the instant case any conflict of interest between Liberty Mutual and D'Amante has been nullified by the following facts:

1. That Liberty Mutual has acted by bringing action No. 2.

2. That Liberty Mutual has acted with dispatch.

3. That Liberty Mutual has divested itself of any control over the prosecution of action No. 2, having given carte blanche to the attorneys for the plaintiff in that action, limited only by the fact that they are to give due consideration to the rights of D'Amante.

4. That Liberty Mutual has made every conceivable effort to insure that the rights of D'Amante are fully protected.

5. That there is no collusion between Liberty Mutual and the attorneys for the plaintiff in action No. 2. Ergo there is no conflict of interest which would prejudice the rights of D'Amante.

6. That the retainer agreement between Liberty Mutual and the attorneys for the plaintiff in action No. 2 " * * * establishes as a matter of law that there is not in this case the kind of conflict of interest which is the basis of the ruling in the Czaplicki case".

These attorneys argue, therefore, that action No. 1 should be dismissed and action No. 2 should be allowed to stand.

### The Argument of the Attorney for the Plaintiff in Action No. 1

The affidavit of Philip F. DiCostanzo, submitted in opposition to the motion in action No. 1, urges that the defendant's motion in that action be denied "and that the Liberty Mutual Insurance Company be made a party to the suit".

Liberty Mutual is on two horns of a dilemma. Having instituted action No. 2 it must proceed in good faith and in the best interests of D'Amante. If it does so and succeeds in this noble effort, it will, in effect, obtain a judgment against itself for, under the terms of its liability policy insuring Isthmian, it will be obliged to pay that judgment. Under the terms of that policy Liberty Mutual is also obliged to defend action No. 2 at its own cost and expense, and that policy necessarily implies that in defending Isthmian in action No. 2 Liberty Mutual will do so vigorously and in the utmost of good faith. In order to fulfill those

inconsistent obligations Liberty Mutual is paying the fee of the attorneys whom it retained directly to defend Isthmian in action No. 1; it is paying the fee of the same attorneys who will defend Isthmian in action No. 2. Although, in form, the Stevedore retained this firm of attorneys, in substance and in effect they were retained by Liberty Mutual to oppose Liberty Mutual in action No. 2. On the other hand, Liberty Mutual directly retained attorneys to represent it as plaintiff in action No. 2 which, in effect, is an action by Liberty Mutual against itself. For this purpose it has retained a law firm to sue one of its own valued clients under the terms of a most unusual retainer agreement. It has made it clear to these attorneys that it does not intend to collaborate with them in action No. 2 but, rather, to collaborate with the attorneys who are defending Isthmian in both actions. And it adds the coup de grace to a most unusual example of confused if not divided loyalty by moving, through one of its firms of attorneys, to dismiss not only action No. 1 but also action No. 2.

If the law requires that both motions should be granted then the Court would feel impelled to agree with the apothegm of Charles Dickens who, speaking through Mr. Bumble, observed:

"If the law supposes that, the law is a ass."[2] and would find it impossible to accept Samuel Johnson's definition of the law as " * * * the last result of human wisdom acting upon human experience for the benefit of the public".[3] The arguments in support of both motions may appear to Liberty Mutual and its attorney to be supported by unanswerable logic. But the logic is demolished by an unanswerable reductio ad absurdum.

■ In Czaplicki v. The Hoegh Silvercloud, supra, Travelers Insurance Company issued a policy of workmen's compensation insurance to plaintiff's employer for purposes of the Longshoremen's and Harbor Workers' Compensa-

tion Act, 33 U.S.C.A. § 901 et seq. It also issued a policy of public liability insurance to the Hamilton Marine Contracting Company. While working aboard the S.S. Silvercloud, owned by the Norwegian Shipping and Trade Mission and operated by Kerr Steamship Company, plaintiff was injured when steps, built by Hamilton Marine Contracting Company, gave way. He elected to accept compensation and accepted from Travelers payment of compensation under an award in a compensation order duly filed. Neither Czaplicki's employer nor Travelers instituted an action against any alleged third party tort-feasor. Plaintiff filed a libel against the vessel, its owners, its operators and Hamilton Marine Contracting Company to recover damages he sustained as a result of his personal injuries, claiming that the vessel was unseaworthy and that the defendants were negligent. Only one of the defendants, Hamilton, was insured by Travelers. There was no contract of indemnity between the Hamilton Company and plaintiff's employer or between the Hamilton Company and the owners or operators of the vessel. Nor did Travelers Company otherwise insure the said owners and operators. The court pointed out that, under the Longshoremen's and Harbor Workers' Compensation Act, plaintiff's rights of action were held by the party most likely to suffer were the rights of action to be successfully enforced, i. e., Travelers as insurer of Hamilton, and determined that plaintiff had the right to sue in his own name despite the strict letter of 33 U.S.C.A. § 901 et seq.

"In these circumstances, we cannot agree that Czaplicki is precluded by the assignment of his rights of action from enforcing those rights in an action brought by himself." Ibid, 351 S.Ct. at page 530, 76 S.Ct. at page 949.

The court held that 33 U.S.C.A. § 901 et seq. presupposes that the assignee's

2. "Oliver Twist" by Charles Dickens, Ch. 51.

3. "Miscellanies" by Samuel Johnson, i, 233.

interests will not be in conflict with those of the assignor.

"In a very real sense, therefore, the injured employee has an interest in his right of action even after it has been assigned. Normally, this interest will not be inconsistent with that of the assignee, for presumably the assignee will want to recoup the payments made to the employee. * * * In giving the assignee exclusive control over the right of action, however, we think that the statute presupposes that the assignee's interests will not be in conflict with those of the employee, and that through action of the assignee the employee will obtain his share of the proceeds of the right of action, if there is a recovery." Ibid, 351 U.S. at page 531, 76 S.Ct. at page 950.

This Court reads this language of the Czaplicki decision as laying down the basic interpretation of 33 U.S.C.A. § 901 et seq. as construing 33 U.S.C.A. § 933 to be implicit with a statutory presupposition that the interests of the assignee and the employee-assignor will not be in conflict; and as holding that the statutory assignment does not preclude a suit by the employee-assignor against the alleged third party tort-feasor where the assignee's interests are in conflict with those of the assignor.

But the Supreme Court, in its opinion, did refer to the fact that there had been inaction on the part of the assignee.

"Here, where there is such a conflict of interests, the inaction of the assignee operates to defeat the employee's interest in any possible recovery." Ibid, 351 U.S. at page 531, 76 S.Ct. at page 950.

" * * * all we hold is that, given the conflict of interests and inaction by the assignee, the employee should not be relegated to any rights he may have against the assignee, but can maintain the third-party action himself." Ibid, 351 S.Ct. at page 532, 76 S.Ct. at page 950.

It is apparent from the course of action pursued by Liberty Mutual that it applies a delusive exactness to the words of the opinion in the Czaplicki case. "The letter killeth, but the spirit giveth life."[4] Liberty Mutual interprets the Czaplicki case to stand for the proposition that an action instituted by the assignee against a third party will defeat the assignor's right to sue in his own name, regardless of the relationship between the assignee, as plaintiff, and the third party, as defendant; regardless of whether, through the action by the assignee against this third party, the assignor will obtain his share of the proceeds of the right of action, if there is a recovery. It is apparent that Liberty Mutual made its arrangements with the two firms of attorneys with an eye on the decision of the Supreme Court in the Czaplicki case and in the belief that action No. 2 would place the instant cases outside the orbit of the basic equitable concept that was applied in Czaplicki. It is not necessary to find, nor does the Court impute, fraud or collusion between Liberty Mutual and either of its firms of attorneys. But it is obvious to the Court that there was a premeditated attempt to avoid a factual situation that would call for the application of the Czaplicki case.

The Court disagrees with the interpretation of the opinion in the Czaplicki case advanced by Liberty Mutual and its attorneys. They overlook certain portions of that opinion which suggest that the Supreme Court would permit a person in D'Amante's position to sue Isthmian in his own name.

"Since an action by Travelers would, in effect, be an action against itself, Czaplicki is the only person with sufficient adverse interest to bring suit. In this circumstance, we think the statute should be construed to allow Czaplicki to enforce, in his own name, the rights of action that were his originally." Id., 351 U.S. at page 531, 76 S.Ct. at page 950.

4. 11 Corinthians, iii, 6.

"Czaplicki can bring this suit not because there has been no assignment, but because in the peculiar facts here there is no other procedure by which he can secure his statutory share in the proceeds, if any, of his right of action." Id., 351 U.S. at page 532, 76 S.Ct. at page 951.

To this Court the facts in the instant case are even more peculiar than those in Czaplicki. In the instant case Liberty Mutual is not merely the party "most likely to suffer were the rights of action to be successfully enforced", it is the only such party.

There is a conflict of interests between Liberty Mutual and D'Amante which Liberty Mutual concedes in its letter of December 10, 1956 to the attorneys it retained to represent Liberty Mutual as plaintiff in action No. 2. There was such a conflict of interests between Czaplicki and Travelers in the Czaplicki case. In Smith v. Isthmian Lines, Inc., 159 F. Supp. 459, this Court, by Chief Judge Robert A. Inch, held that there was a conflict of interests between Smith and Liberty Mutual. In that case Smith was a longshoreman in the employ of the same stevedore and claimed to have been injured on board the S.S. Steel Director, owned by Isthmian. Liberty Mutual wrote the stevedore's compensation insurance and also the public liability insurance insuring the stevedore and Isthmian, pursuant to the terms of the same stevedoring contract between International and Isthmian. The court found a conflict of interests "In view of the fact that insurer of plaintiff's employer is also insurer of defendant * * *." In the Smith case, the statutory assignee of Smith's cause of action, however, had taken no action against Isthmian, the alleged third party tort-feasor, so that the facts in the Smith case were substantially the same as those in Czaplicki. Nevertheless, Chief Judge Inch did not base his denial of Isthmian's motion to dismiss Smith's complaint on the ground of conflict of interests plus inaction but, rather, on the ground of conflict of interests.

"In view of the * * * conflict of interests * * * the assignment of plaintiff's rights against defendant to his employer and its insurer does not preclude plaintiff from bringing this action and enforcing those rights therein (Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387). Therefore, defendant's motion is denied." 159 F.Supp. 460.

The precise issue that is raised in the instant case was not raised or decided in the Smith case because Liberty Mutual had not instituted an action against Isthmian as the insurer of Smith's assignee. No case has been called to the Court's attention nor has independent research revealed one in which the precise question raised on these two motions has been considered by any court.

The precise question here is whether, granted a conflict of interests, action No. 2 is such action by the statutory assignee or its carrier as to satisfy the spirit and the implications of the Czaplicki case. Liberty Mutual argues that action No. 2, in fact, is an action in behalf of D'Amante despite the peculiar facts in these two cases. Liberty Mutual employs illusive arguments and specious reasoning that would enmesh D'Amante in a cobweb of sophistry that "acquits the raven, but condemns the dove".[5] Action No. 2 is a "manifest absurdity" (Johnson v. Sword Line, Inc., 3 Cir., 240 F.2d 954, 1957 A.M.C. 308), such as Mr. Justice Black envisioned in his dissenting opinion in Ryan Stevedoring Co. v. Pan-Atlantic Corp., 1955, 350 U.S. 124, 145, 76 S.Ct. 232, 243, 100 L.Ed. 133:

"The employer as an assignee of an employee's claim will know that if he wins a lawsuit, he loses a lawsuit. This knowledge will not give him a yearning anxiety to file suit. Even though he yields to the call of duty and files the lawsuit, he might not be exceedingly anxious to write

5. Juvenal, Satires, Sat. ii, 1.63.

a good complaint. His other pleadings might not be all that a zealous lawyer would desire. Although the employer must pay the judgment, his will be the opening argument to the jury. And when the last word is said in the closing argument, it will be made by counsel who knows that if he persuades the jury to give his client a verdict his client will have to pay it."

The motion to dismiss the complaint and for summary judgment in favor of the defendant in action No. 1 is denied. The motion to dismiss the complaint and for summary judgment in action No. 2 is granted. These determinations are made without prejudice to Liberty Mutual to move to be made a party to action No. 1. Settle orders.