Louis J. Friedman, J.
Plaintiff moves for summary judgment striking out the answer of the defendants and setting the matter down for assessment of damages. By order to show cause, and as a cross motion, defendants move to amend their answer, so that it will contain a denial of one of the paragraphs of plaintiff’s complaint in which it is alleged that defendants *661 were negligent and plaintiff was free from contributory negligence. Defendants assert that they erroneously failed to deny this paragraph when the original answer was served.
The action is brought in negligence to recover for personal injuries sustained by plaintiff. The defendants are respectively the owner and operator of the automobile which caused the accident, and since their interests are exactly alike, they will hereinafter be referred to in the singular as 11 defendant. ’ ’
It is obvious that the failure by defendant to deny paragraph tenth of plaintiff’s complaint is a mere error. Plaintiff does not show any prejudice by reason thereof, and in fact seems to have proceeded as though the paragraph was denied. Under such circumstances, were it not for the disposition which is herein to be made of plaintiff’s motion for summary judgment, the motion to amend would have been granted. Said motion is, however, denied because of the disposition which is hereinafter made with respect to the motion for summary judgment.
The papers before the court on the motion for summary judgment require a discussion of two separate matters. The first is as to the accident itself, and whether on the facts and papers which have been presented to the court, defendant has any defense or is entitled to be heard on the issues of negligence and contributory negligence. The second is with respect to a glaring conflict of interest on the part of the defendant’s attorneys, which may not be here disregarded or overlooked, since defendant’s attorneys have themselves outlined this conflict of interest in the affidavits which they have submitted in opposition to this motion.
The accident occurred on April 11, 1957, on Grafton Street, in the Borough of Brooklyn, City of New York. It is alleged in the complaint and in the moving papers that on that day the plaintiff was on the sidewalk of G-rafton Street and was struck and knocked down by the automobile of the defendant, when it backed up onto the sidewalk. It is claimed that as a result of the accident, plaintiff was rendered unconscious and was later removed to a hospital where he was confined for over a month suffering from the personal injuries which he sustained. Other items of injuries and damages are set forth in the moving affidavit, but they are not germane to the present question before the court. Plaintiff contends that the defendant has no defense to the action.
In outlining the facts of the accident, the plaintiff sets forth that before it had happened, he was a passenger in the automobile of the defendant and when it stopped on G-rafton Street, *662 defendant parked the car, permitting plaintiff to get out of it onto the sidewalk. It is claimed that while plaintiff was standing there, several feet from the curb, defendant started to repark the car to get it closer to the curb, and in doing so, backed it onto the sidewalk thus knocking plaintiff down.
Submitted in support of the motion is the examination before trial of the defendant whose testimony indicates that both he and the plaintiff rode to Grafton Street in defendant’s automobile, that plaintiff was the uncle of defendant, that when the car arrived at its destination it was parked and plaintiff got out and onto the sidewalk, that defendant realized that he ‘ ‘ was too far away from the curb.” He then said: “ I then again started my motor, and started to back up to get closer to the curb. My steering — it’s power steering- — something happened there that the wheel turned completely counter-clockwise, actually spun out of my hand and I shot back on the sidewalk with my rear left wheel, and "struck my uncle with the rear left portion of my car.” He then testified that he had turned off his ignition when he first parked, had pulled up his brake and was getting out of the car when he realized his distance from the curb, and that without saying anything to his uncle about it, he got back into the car, pulled it away from the curb some distance so that he could back it in again and it was while doing so that the accident occurred.
No affidavit in opposition to the motion for summary judgment is submitted by defendant and no other explanation as to the cause of the accident is presented, other than what has been here stated. On these facts, defendant has no defense to the action since the fact that the automobile mounted the sidewalk and struck a person thereupon, raises a presumption of negligence on the part of the driver of the automobile (Locicero v. Messina, 239 App. Div. 635).
Defendant’s attorneys, although submitting no affidavit from defendant himself, have submitted two other affidavits in opposition to this motion. One is by a member of the firm of the attorneys for the defendant and the second is by one Meyer Steinberg, a licensed investigator of the State of New York. In the affidavit of the attorney it is set forth that defendant is the nephew of plaintiff, that these two parties are the only witnesses to the occurrence, that there is no police report on file and an extensive canvass of the neighborhood reveals that no one knew or heard of the accident, that plaintiff was allegedly treated on the scene by a Dr. Schwalben and was thereafter taken to the hospital by ambulance at the request of this physi *663 clan, wlio is also a relativo of both plaintiff and defendant. The investigation is said to have revealed that about one hour after the accident allegedly occurred this Dr. Schwalben was married and that the wedding took place on Grafton Street near Livonia Avenue and that plaintiff was a witness at said wedding. It is further claimed that both plaintiff and defendant attended at the wedding of the doctor shortly after the time of the accident. Interviews with the defendant resulted in claimed misstatements by bim and the attorney set forth that “ deliberate deception * ® * has been practiced.” It is then stated in the affidavit : “ I am of the belief that the claimed accident never occurred.” The affidavit concludes with a prayer that the motion be denied on the ground that there is a supposed conspiracy between the plaintiff and the defendant and Dr. Schwalben for the purpose of defrauding an insurance company, and that “ Occasionally we have an action or claim where relatives conspire to defraud an insurance company. All of the indications are against the claim in this action. ’ ’
The affidavit of Meyer Steinberg is the source of the information set forth in the affidavit of the attorney Herbert McDevitt. He says that he is a licensed investigator and was retained by the New York Mutual Insurance Company to conduct a special investigation of this case. He further claims that from Ms investigation 1 ‘ it appears that the claim of the plaintiff herein as to the occurrence of this accident is open to suspicion.” The investigator interviewed the defendant and says that the statements as to the place of the occurrence were indefinite, but that in a previous statement given to the insurance company, defendant had told about the accident, had stated that the accident occurred as he has testified upon the examination before trial, that Dr. Schwalben was called, who responded within about 10 minutes and that plaintiff was removed by ambulance to the Forest Hills Hospital. According to the investigator, plaintiff is supposed to have remained on the sidewalk in an unconscious state until removed by ambulance although plaintiff makes no such claim.
One of the so-called “ suspicious ” matters is that the doctor’s office is a half hour away in traveling time from the scene of the accident, and yet he allegedly treated the plaintiff within 10 minutes and then called for the ambulance.' Other supposedly suspicious circumstances are claimed to surround this accident, including the fact that no other witness has been found who saw the accident. An interview by the investigator with the rabbi who performed the wedding ceremony indicated that *664 a member of the wedding party had sustained an injury and “ was lying prone on a sofa in the rabbi’s premises.” It is claimed that another witness to the wedding denied that there was any injured person at the wedding or anyone lying down, but no affidavit from any such witness is supplied as part of the answering affidavits. The purpose of the visit by plaintiff and defendant to the Grafton Street area was inquired into by the investigator and his comment with respect thereto is that ‘ ‘ both the plaintiff and the individual defendant have stated on various occasions that the purpose of the trip was for the defendant to look at a house which may have been for sale.” No affidavit is submitted to anyone who allegedly heard such statement to indicate that plaintiff or defendant ever in fact made such a statement.
By way of reply, plaintiff completely explains away all of the claimed suspicious circumstances. Dr. Schwalben was to be married that day by a rabbi, at his study on Grafton Street in Brooklyn. His relatives, including plaintiff and defendant, were invited to attend the wedding ceremony. Defendant stopped his car in front of or near the rabbi’s study, where the ceremony was to be performed, and plaintiff, a man 66 years of age. got out on the sidewalk. When the accident occurred, Dr. Schwalben was called out into the street from the rabbi’s study, to render first aid. Since he was to be married there that day, there can be no question that he was present at the scene, even though his office was a half hour’s ride away. It is well recognized in the traditions of many religious groups that a wedding should take place as scheduled, even though accident of tragedy may sometimes call for a postponement thereof, and there is nothing unusual in the fact that despite this accident to this relative, the ceremony took place as planned. Certainly there can be no suspicion attached to the fact that relatives were present at the scene of this accident, and at the wedding,' since such relatives are the customary attendants at such a function. Neither can there be any suspicion attached to the fact that prior to the accident, the uncle had been riding in the car of his nephew, since strangers ordinarily are not guests in other people’s automobile, and it would be the unusual rather than the usual, to find that one other than a close friend or relative is a passenger in a car operated by someone who is thereafter being sued.
All of these facts make any suspicion, and the claimed fraud and collusion between plaintiff and defendant, vanish into thin air.
*665 In a motion for summary judgment, the burden is upon the defendant to submit facts showing that he is entitled to defend (Gurry v. MacKenzie, 239 N. Y. 267, 269-270). An opposing affidavit by an attorney which does not reveal that he has any personal knowledge of the facts, is without probative value (Barnet v. Horwitz, 278 App. Div. 700). See, also, Berman v. Entwistle (N. Y. L. J., June 15, 1959, p. 13, col. 2) where summary judgment was also granted in a case involving a similar accident where a car backed onto the sidewalk (see, also, Smolenack v. Hess, 274 App. Div. 907; Favole v. Gallo, 263 App. Div. 729; Phelan v. Houghton, 16 Misc 2d 227; Dodwell & Co. v. Silverman, 234 App. Div. 362, 363; City Sav. Bank of Brooklyn v. Torro, 253 App. Div. 748; Seventh Nat. Bank of N. Y. v. Cromwell, 131 Misc. 276; Irving Trust Co. v. Orvis, 139 Misc. 670; City Bank Farmers Trust Co. v. B. W. Constr. Corp., 19 Misc 2d 593; 3 Carmody, New York Practice, §§ 1076, 1078).
Accordingly, as between plaintiff and defendant, there is no defense to this action, the motion for summary judgment is granted and the matter is set down on the calendar of September 8, 1959, at Trial Term, Part I, for assessment of plaintiff’s damages. If no note of issue has been filed, plaintiff will be required to file one for the September 1959 Term, as a condition for having his damages assessed, and the order to be entered herein shall either set forth the calendar number of this action, if it is already on the calendar, or contain directions for the filing of a note of issue.
The facts in this case present a conflict of interests on the part of the attorney who appears here for the defendant. Actually, the attorney represents the New York Mutual Insurance Company, which insured the defendant against liability for accident, and even though, pursuant to the terms of the insurance contract, the insurance company has the right to retain counsel to appear for the defendant, the lawyer may not take up the cudgels of this insurance carrier, when its interests are diametrically opposed to the interests of the assured. A lawyer who represents a client is required to do so wholeheartedly and with full determination to assert his client’s cause and to protect his rights. He is not required to participate in or to help in perpetrating a fraud, and if he is satisfied that his client is so conducting himself, it is his duty as an officer of the court to withdraw as counsel. He may not, however, take up the defense of the one upon whom the fraud is sought to be practiced, particularly where he has already received the confidence of his client.
*666 In this case it is the lawyer’s claim that the client whom he represents is attempting to commit a felony. His affidavit charges his own client with attempted larceny, with conspiracy to defraud, with perjury, and several related crimes. Under the terms of the insurance contract, the insured is required to confer with the attorney selected by this insurance company, and yet every confidence which will be reposed in this lawyer will be revealed to the client’s adversary herein, the insurance carrier. The lawyer may not, while bearing aloft the banner of his supposed client, at the same time carry on battle against him, and it is his duty to withdraw from the defense of this action under the circumstances which appear herein. As was said by Judge Zavatt in D’Amante v. Isthmian Lines (159 F. Supp. 468, 478): [Insurance Company] “ employs illusive arguments and specious reasoning that would enmesh D ’Amante in a cobweb of sophistry that ‘ acquits the raven, but condemns the dove ’.”
The court may not close its eyes to the obvious. The prime interest of these attorneys is the insurance company, in whose behalf they defend many cases year after year. Where the interests of the carrier and the client run parallel, with each other, the attorneys undoubtedly will exert their best efforts to protect the interests of their client, since in so doing, they will also be protecting the interests of their real principal. But where, as in this case, the interests are adverse one to the other, then the attorneys may not “ assist the lost traveler along the road and at the same time prepare a trap into which he will ultimately fall.”
If its assured was committing a fraud upon the insurance company through collusion with the plaintiff, the company had a remedy. It could have refused to defend, or even after interposing a defense, could have withdrawn therefrom upon discovery of the claimed facts. It could not, with knowledge of facts constituting a defense against recovery on its policy, both continue with the defense and yet claim that it was not obligated on this policy (Moore Constr. Co. v. United States Fid. & Guar. Co., 293 N. Y. 119; Gerka v. Fidelity & Cas. Co., 251 N. Y. 51, 57; Rosenwasser v. Globe Ind. Co., 224 N. Y. 561; 269 Canal St. Corp. v. Zurich Gen. Acc. & Liab. Ins. Co., 252 N. Y. 603; 8 Appleman, Insurance Law and Practice, § 4692; Ann. 38 A. L. R. 2d 1148, 1151; see Cardinal v. State of New York, 304 N. Y. 400, 411, cert, denied 345 U. S. 918). Continuing with the defense, as has been done in this case, undoubtedly amounts to a waiver of a later claim of nonliability.
*667 In Impellizzeri v. Haug (282 App. Div. 742) the Appellate Division, Second Department, had before it a situation where a law firm, retained by an insurance company to represent an insured, sought to withdraw as attorneys for the insured because of an apparent conflict of interest between their real principal, the insurance company, and their supposed clients. In modifying an order which denied leave to withdraw, and in permitting such withdrawal, the Appellate Division said: “ The interests of the carrier and Hang are in apparent conflict with those of Lassen. The court should not withhold approval of counsel’s application to withdraw from this anomalous situation.”
A similar result involving conflict of interest was reached in Prashker v. United States Guar. Co. (1 N Y 2d 584). Where, as in this case, there is a conflict of interest between the insurance company and its assured, the attorney may not continue to represent both (Reynolds v. Maramorosch, 208 Misc. 626; American Employers Ins. Co. v. Goble Aircraft Specialties, 205 Misc. 1066; Heller v. Alter, 143 Misc. 783).
A casualty company which defends its assured is held to a very strict rule of good faith, when they assume the responsibility of a defense through the retention of attorneys for their assured (American Employers Ins. Co. v. Goble Aircraft Specialties, supra; Neiv York Cons. R. R. Co. v. Massachusetts Bonding & Ins. Co., 193 App. Div. 438, 444, affd. 233 N. Y. 547; Matter of Szabo v. Standard Commercial Body Corp., 221 App. Div. 722). In the American Employers case (supra) the court said: “ The attorney may not seek to reduce the company’s loss by attempting to save a portion of the total indemnity in negotiations for the settlement of a negligence action, if by so doing he needlessly subjects the assured to judgment in excess of the policy limit. His duty to the assured is paramount. The Canons of Professional Ethics make it pellucid that there are not two standards, one applying to counsel privately retained by a client, and the other to counsel paid by an insurance carrier (Canons of Professional Ethics, 6, 45). If the interests of the carrier and the assured are or are likely to become diverse, he cannot represent both. 1 Divided obligations in trust relations are obnoxious to the law, and in none more so than in that of attorney and client ’ (People v. Peoples Trust Co., 180 App. Div. 494).
“ The late Chief Judge Lehman, in Loew v. Gillespie (90 Misc. 616, 619, affd. 173 App. Div. 889), clearly stated: ‘ The relation of attorney to client is a high trust. * * * Not only may he do nothing adverse to his client but he may accept no *668 retainer to do anything which might be adverse to his client’s interests. These principles must be regarded as the foundation of all the rules which the courts and the leaders of the legal profession have announced as fixing the proper relations of attorneys and clients. Public policy absolutely demands that these foundations be not weakened * * * the essential
question in each case is whether or not the attorney has accepted a retainer which is in any manner in conflict with his obligation to some other client.’ ”
The attorneys who appear for the defendant in this case appear to have accepted a retainer which is in conflict with their obligations to another client. They should withdraw from any further proceedings in this action, permitting the defendant to retain other counsel whose fees shall be paid by the insurance carrier under the terms of its policy.
Settle order on notice in accordance with the above.